# STATE OF MICHIGAN

# COURT OF APPEALS

UNITED METHODIST RETIREMENT
COMMUNITIES, INC.,

       Petitioner-Appellant,

v

CITY OF CHELSEA,

       Respondent-Appellee.

UNPUBLISHED
May 22, 2018

No. 337998
Michigan Tax Tribunal
LC No. 15-003171-R

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Petitioner appeals by right the decision of the Michigan Tax Tribunal (the Tribunal) granting respondent's motion for summary disposition and denying petitioner's cross-motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact and moving party entitled to judgment as a matter of law). The Tribunal held, with regard to tax years 2015 and 2016, that petitioner was not entitled to exemption from ad valorem taxation under MCL 211.7o(1) (the charitable purpose exemption), MCL 211.7r (the hospital or public health exemption), or MCL 211.7o(8)(b)(*i*)(B) (the home for the aged exemption).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner is a Michigan nonprofit corporation with tax-exempt status under § 501(c)(3) of the Internal Revenue Code, 26 USC §501(c)(3). Petitioner's articles of incorporation state that its specific purposes and powers include the operation of residential retirement facilities for senior citizens, including those who have limited or no financial resources. According to its corporate bylaws, petitioner's mission is to "promote the wellness, dignity, and independence of older adults by providing high quality and innovative residential and supportive services" to residents of its facility.

---

[1] Because petitioner does not dispute the Tribunal's ruling with regard to the home for the aged exemption established under MCL 211.7o(8)(b)(*i*)(B), we do not address the Tribunal's conclusions of law regarding that statutory subsection.

Petitioner owns and operates the Chelsea Retirement Community in Chelsea, Michigan. The Chelsea Retirement Community provides its residents with several senior living options along a continuum of care, including independent and assisted living apartments, a short-stay rehabilitation facility, and a specialized assisted living environment for residents living with all stages of memory loss. Petitioner provides assisted living apartments at "Towsley Village" and "Glazier Commons," both located within the Chelsea Retirement Community.

Towsley Village is dedicated solely to those seniors in need of specialized memory care, including those with progressive dementia. Glazier Commons is designed for senior citizens who require 24-hour physical care or assistance. These residents are medically stable but require staff management of their physical care, activities of daily living, and medical care. The type of care provided to residents of Glazier Commons may include, among other things, dispensing of medications, bathing/showering, toileting and/or incontinence care, dressing/undressing, activities, and appointments within the facility. Petitioner's marketing materials indicate that Glazier Commons "is not a nursing home service or a medical plan" and that residents will generally "require health care and other services" in addition to those provided by petitioner to residents. Petitioner also provides residents of Glazier Commons with planned activities and events, such as manicures, fitness classes, technology seminars, story hour, movies, bingo, dog visits, crafts, and chapel services.

The costs to residents of Glazier Commons range from a daily rate of $242 for a standard suite to $262 for a deluxe suite. These rates cover utilities, three meals per day, snacks, dispensing of medications, linens, weekly housekeeping and laundry services, assistance with baths or showers, assistance with dressing/undressing, activities/programming, 24-hour care, telephone, satellite television and Wi-Fi. In order to live at Glazier Commons, a potential resident must complete and submit a personal health profile, a physician's confidential medical report, and a confidential data and financial disclosure form. The financial disclosure form asks a potential resident to disclose the value of all real estate assets, as well as stocks, bonds, mutual funds, trusts, bank accounts, and annuities, and also asks potential residents to list their monthly income from various sources. The application form allows a potential resident to decline to disclose financial information to petitioner but states that a failure to disclose assets and income will result in ineligibility for benevolent care support under petitioner's financial assistance policies for its residents.

Petitioner began construction of Glazier Commons in 2013, and completed it in 2014. In 2015, respondent assessed petitioner property tax on the Glazier Commons portion of the property. Petitioner challenged respondent's assessment before its board of review, arguing that Glazier Commons was merely an extension of Towsley Village, which was a tax-exempt facility.[2] In 2015, after respondent's board of review refused to grant relief, petitioner filed a petition with the Tribunal claiming that the Glazier Commons portion of the property was exempt from ad valorem taxation under MCL 211.7o(1), MCL 211.7r, and MCL 211.7o(8). The

---

[2] The Tribunal noted that respondent did not challenge the tax-exempt status of Towsley Village and that respondent's assessment of property taxes was calculated using the income capitalization approach for the 66 living units that comprised Glazier Commons.

petition noted that respondent had classified the property as tax exempt in 2014, but had changed the property's classification to "commercial improved real property" in 2015 and had assessed property tax. Petitioner subsequently amended its petition to include the 2016 tax year. The parties filed cross-motions for summary disposition under MCR 2.116(C)(10). The Tribunal granted respondent's motion for summary disposition and denied petitioner's cross-motion for summary disposition, holding that petitioner was not entitled to tax exemption as a matter of law. This appeal followed.

## II. STANDARD OF REVIEW

Our review of a Tribunal decision is "multifaceted." See *Briggs Tax Svc, LLC v Detroit Public Schools*, 485 Mich 69, 75; 780 NW2d 753 (2010).

> If fraud is not claimed, this Court reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the Tax Tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo. We also review de novo the grant or denial of a motion for summary disposition. [See *id.* (quotation marks and footnotes omitted).]

"A Tax Tribunal decision that is not supported by competent, material, and substantial evidence on the whole record is an error of law . . . ." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 366, 388-389; 576 NW2d 667 (1998). "Substantial evidence must be more than a scintilla of the evidence, although it may be substantially less than a preponderance of the evidence." *Id.* "Substantial" evidence is evidence that a reasonable mind would accept as sufficient to support the conclusion. *Kotmar, Ltd v Liquor Control Comm*, 207 Mich App 687, 689; 525 NW2d 921 (1994).

## III. CHARITABLE INSTITUTION EXEMPTION

Petitioner claims that the Tribunal erred by holding that it was not entitled to exemption from ad valorem taxation under MCL 211.7o(1), which provides that "[r]eal or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act." We disagree. Tax exemptions are to be strictly construed in favor of the taxing unit. See *Mich Baptist Homes & Dev Co v Ann Arbor*, 396 Mich 660, 670; 242 NW2d 660 (1976). Petitioner bears the burden of proving entitlement to a tax exemption by a preponderance of the evidence. *ProMed Healthcare v Kalamazoo*, 249 Mich App 490, 492; 644 NW2d 47 (2002).

Our Supreme Court has held that in order to qualify for tax-exempt status under MCL 211.7o(1), a petitioner must establish three elements:

(1) The real estate must be owned and occupied by the exemption claimant;

(2) the exemption claimant must be a nonprofit charitable institution; and

(3) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated. [*Wexford Med Group v Cadillac*, 474 Mich 192, 203; 713 NW2d 734 (2006).]

There is no dispute that petitioner owned and occupied the real property at issue in this case during the relevant time period. Petitioner challenges the Tribunal's ruling that, even if petitioner qualified as a charitable institution, petitioner did not occupy the property at issue solely for the purposes for which petitioner was incorporated, and therefore, that petitioner was not eligible for tax exemption under MCL 211.7o(1). We conclude that the Tribunal's decision in this regard was not based on an error of law and was supported by competent, substantial, and material evidence. *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 388-389.

In making its decision that petitioner did not occupy the Glazier Commons portion of the property solely for the purpose for which it was incorporated, the Tribunal relied, in large part, on comparisons between the facts of this case and the facts presented in *Mich Baptist*, 396 Mich at 660, and *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp*, 416 Mich 340, 348; 330 NW2d 682 (1982). In *Mich Baptist*, 396 Mich at 644, our Supreme Court considered whether the Hillside Terrace home for the aged was entitled to a statutory exemption from ad valorem taxes "as property owned and occupied by a benevolent or charitable institution solely for the purposes for which said institution was incorporated." At that time, the statutory language established tax-exempt status for the following property:

> Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions and memorial homes of war veterans incorporated under the laws of this state with the buildings and other property thereon *while occupied by them solely for the purposes for which they were incorporated.* [*Id.* at 664 n 1 (emphasis added).]

Although the *Mich Baptist* Court considered a predecessor statute to that at issue in this case, the pertinent portion of the statutory language (requiring that a petitioner must occupy the property for the purposes for which the petitioner was incorporated) remains essentially the same as that portion of the statute construed in *Mich Baptist*:

> Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act. [MCL 211.7o(1).][3]

In *Mich Baptist*, the petitioner operated a residential building that was licensed by the state of Michigan as a home for the aged, comprised of 55 one-bedroom and two-bedroom apartments. *Mich Baptist*, 396 Mich at 666-667. All of the petitioner's financial costs to operate the facility were met through the fees charged by the petitioner to its residents. Upon applying to

---

[3] Other portions of the statute were subsequently amended, but they are not at issue.

become a resident in the facility, each applicant was also "asked to make a rather complete disclosure of assets and income." *Id*. at 668.

> In addition to the financial restrictions upon admission, there are strict health requirements. Prior to admission, each applicant must submit to a physical examination. Applicants must be at least 65 years of age, must be in reasonable good health, and must be free of all contagious or objectionable diseases. Applicants must demonstrate ability to maintain themselves in apartments and take meals in the dining facility without the aid of nursing personnel. [*Id*. at 669.]

While the petitioner in *Mich Baptist* offered testimony that, during the tax year in question, the monthly service charge for 4 of the 72 residents "was reduced because of special consideration given to the financial status of these residents," our Supreme Court noted that the "extent of the reduction was not made clear." *Id*. at 668. Our Supreme Court then explained that "[w]ith but few exceptions above noted, ability to pay all fees is a factor determining whether an applicant will be admitted to" the petitioner's senior housing facility. *Id*. at 668. Based on these facts, the Court held that the petitioner was not entitled to tax-exempt status, for the following reasons:

> [W]hile it is clear that the purposes of plaintiff as set forth in its articles [of incorporation] are benevolent, charitable, and general welfare purposes, we are of the opinion that Hillside Terrace was not occupied for what would traditionally be called charitable or benevolent objectives during the years in question. Basically, it may be said that charity or benevolence benefit the general public without restriction. On this record, is appears that the management of Hillside Terrace does not serve the elderly generally, but rather provides an attractive retirement environment for those among the elderly who have the health to enjoy it and who can afford to pay for it. Plaintiff's health and financial limitations on admission cannot be said to benefit the elderly as a general proposition. [*Id*. at 671.]

Likewise, in *Retirement Homes*, 416 Mich at 343, our Supreme Court considered the tax-exempt status of a residential facility for senior citizens. In that case, the 24 apartments in the petitioner's facility were "designed for independent living." *Id*. at 344. Potential residents applying to live in the facility were "required to supply medical and financial information" to the petitioner. Although the petitioner "claimed that no one was ever refused care or evicted because of inability to pay fees," the petitioner acknowledged that "residents of the apartments who became unable to maintain the monthly fee were asked to transfer to one of [petitioner's] other facilities" where they could obtain government assistance. *Id*. at 345-346. Considering these facts, the Tribunal relied upon *Mich Baptist* and denied petitioner tax-exempt status. This Court reversed the Tribunal's decision, finding the *Mich Baptist* decision distinguishable. The Michigan Supreme Court then reversed the decision of this Court, ruling that its decision in *Mich Baptist* was controlling and required a ruling that the petitioner in *Retirement Homes* did not occupy the property for the purposes for which the petitioner was incorporated. *Id*. at 343.

In this case, petitioner argues that our Supreme Court's decision in *Baruch SLS, Inc v Tittabawassee Twp*, 500 Mich 345; 901 NW2d 843 (2017), overruled *Mich Baptist*. We disagree. In *Baruch*, the Supreme Court did not discuss its prior holding in *Mich Baptist*, and did

not consider whether the petitioner in that case occupied the premises solely for the purposes for which it was incorporated. Instead, the *Baruch* Court focused solely on the proper interpretation of one of the factors, as set forth in *Wexford*, by which to determine whether a petitioner is a charitable institution, not whether the petitioner occupied the premises solely for the purposes for which it was incorporated.[4] Therefore, contrary to petitioner's argument on appeal, *Baruch* did not disturb our Supreme Court's prior holding in *Mich Baptist,* and that decision remains binding on this Court.

Petitioner must occupy the property in question "for the purposes for which that nonprofit charitable institution was incorporated" in order to qualify for tax exemption under MCL 211.7o. Our Supreme Court's opinion in *Mich Baptist* requires that, in order to satisfy this requirement, a petitioner must occupy the property "for what would traditionally be called charitable or benevolent objectives," and held that a petitioner does not qualify for the tax exemption if its facility "does not serve the elderly generally, but rather provides an attractive retirement environment for those among the elderly who have the health to enjoy it and who can afford to pay for it." *Mich Baptist*, 396 Mich at 671. The facts of this case are similar to *Mich Baptist*—for example, petitioner requires Glazier Commons applicants to undergo financial and medical certification, and may ask recipients of their financial assistance to relocate to less expensive housing. We conclude that the Tribunal correctly applied *Mich Baptist* in holding that petitioner failed to satisfy the requirement of MCL 211.7o(1) that the "buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated," as that requirement has been interpreted by our Supreme Court. For this reason, we affirm the Tribunal's grant of respondent's motion for summary disposition and its denial of petitioner's cross-motion for summary disposition under MCR 2.116(C)(10), with regard to petitioner's entitlement to tax-exempt status under MCL 211.7o(1).[5]

## IV. PUBLIC HEALTH EXEMPTION

Petitioner also argues that the Tribunal erred by holding that it was not entitled to the public health exemption. We disagree. MCL 211.7r provides in pertinent part:

The real estate with the buildings and other property located on the real estate on that acreage, owned and occupied by a nonprofit trust and used *for hospital or public health purposes* is exempt from taxation under this act, but not including excess acreage not actively utilized for hospital or public health

---

[4] In *Wexford*, 474 Mich at 207-208, our Supreme Court discussed its prior opinion in *Mich Baptist* as part of its recitation of the historical development of the caselaw of this state regarding tax exempt status for charitable institutions. However, *Wexford* did not consider whether the petitioner in the case before the Court occupied the premises solely for the purposes for which it was incorporated, noting that there was "no dispute" with respect to that factor. *Id*. at 204.

[5] Because we conclude that petitioner did not occupy the properly solely for the purposes for which it was incorporated, we need not address whether petitioner qualifies as a charitable institution under MCL 211.7o(1).

purposes and real estate and dwellings located on that acreage used for dwelling purposes for resident physicians and their families. [Emphasis added.]

The Tribunal concluded that there was no genuine issue of material fact and that petitioner failed to qualify for exemption under MCL 211.7r because petitioner does not use Glazier Commons for "public health purposes." The Tribunal relied on the reasoning set forth by this Court in *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 33; 568 NW2d 332 (1997) (some citations omitted), in which this Court applied the dictionary definition of the phrase "public health" as follows:

The phrase "public health purposes" is not defined in the statute. When, as in this case, a word is not defined in the statute, a court may consult dictionary definitions. *The American Heritage Dictionary: Second College Edition* defines "public health" as

[t]he art and science of protecting and improving community health by means of preventative medicine, health education, communicable disease control, and the application of the social and sanitary sciences.

Applying this dictionary definition to the case before it, the *Rose Hill* Court held that the petitioner qualified for the tax exemption set forth in MCL 211.7r:

In the instant case, the Tribunal found that petitioner was engaged in the provision of services to mentally ill patients. These services include psychiatric evaluation and diagnosis, the prescription and dispensation of medication, and rehabilitation and reintegration programs. Petitioner is staffed by a psychiatrist, psychiatric nurses, and social workers and provides twenty-four-hour care to its patients. Petitioner is open to mentally ill adults without regard to race, religion, or sex. Petitioner accepts patients covered by Medicare and Medicaid, as well as by private sources.

After considering these facts, we believe that petitioner can reasonably be considered to be operating a facility for "public health purposes." [*Id.* at 33.]

Applying this definition to the facts presented in this case, we conclude that petitioner failed to show that the Glazier Commons facility was used for public health purposes, and that the Tribunal therefore properly granted respondent's motion for summary disposition and denied petitioner's cross-motion for summary disposition. Petitioner's own materials indicated that Glazier Commons "is not a nursing home service or a medical plan" and noted that residents will "require health care and other services in addition to those provided" by petitioner to its residents. Petitioner's facility at Glazier Commons is primarily a residential facility for those who can afford to pay the cost to live there. On these facts, we conclude that petitioner's Glazier Commons property does not qualify for tax exemption under MCL 211.7r because it is not property used for public health purposes. The Tribunal properly held that petitioner in its Glazier Commons facility only provides a high-end residence to those who can afford it, rather than care to the community at large, and therefore does not meet the public health purposes requirement.

## V. ERRORS IN SUMMARY DISPOSITION PROCEEDING

Petitioner argues that the Tribunal improperly made credibility determinations and factual findings when deciding the parties' cross-motions for summary disposition. We agree, but conclude in our de novo review of its decision that these errors do not alter the outcome. Despite the fact that the Tribunal was "not permitted to assess credibility" in deciding a motion for summary disposition under MCR 2.116(C)(10), see *Skinner v Square D Co*, 445 Mich 153, 161-162; 516 NW2d 475 (1994), the Tribunal expressly admitted that it had done so. In response to petitioner's motion for reconsideration from its final judgment and order, the Tribunal noted that it had expressly considered certain unsigned affidavits submitted by petitioner and that, in its opinion, the affidavits were not found to be credible. Additionally, the Tribunal made the factual finding that Glazier Commons was not part of the same facility as Towsley Village. Because the Tribunal was deciding a motion for summary disposition and was not conducting the equivalent of a bench trial, we conclude that the Tribunal erred by making credibility determinations and findings of fact. See *Skinner*, 445 Mich at 161-162. However, considering the documentary evidence in the light most favorable to petitioner and granting the benefit of the doubt to petitioner, we nonetheless conclude that petitioner is not entitled to tax-exempt status under either MCL 211.7o(1) or MCL 211.7r, as a matter of law, for the reasons set forth above. See *id*. Even if there were disputed factual issues or credibility issues, they did not present a genuine issue of *material* fact. We therefore affirm the Tribunal's order granting respondent's motion for summary disposition and denying petitioner's cross-motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra